DAVID L. NEALE (SBN 141225)
KRIKOR J. MESHEFEJIAN (SBN 255030)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone: (310) 229-1234; Facsimile: (310) 229-1244
Email: dln@lnbyb.com; kjm@lnbyb.com

Attorneys for Chapter 11 Debtors and Debtors in Possession

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>North American Health Care, Inc.,<br><br>       Debtor and Debtor in Possession.<br>―――――――――――――――――――<br>In re:<br><br>Carmichael Care, Inc.,<br><br>       Debtor and Debtor in Possession.<br>―――――――――――――――――――<br>☒ Affects All Debtors<br><br>☐ Affects North American Health Care, Inc.<br>☐ Affects Carmichael Care, Inc.<br>―――――――――――――――――――― | ) Lead Case No.: 8:15-bk-10610-MW<br>)<br>)<br>)<br>) Jointly administered with:<br>)<br>) Case No. 8:15-bk-10612-MW<br>)<br>) Chapter 11 Cases<br>)<br>) **DEBTORS' TORT CLAIM**<br>) **RESOLUTION PROPOSAL**<br>)<br>) [Declarations of Wylie Strout, John<br>) Sorensen and Thomas E. Beach Filed<br>) Concurrently Herewith]<br>)<br>)<br>) |

1

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................ 2

    A.    The Claims ................................................................................ 3

    B.    The Proposal ............................................................................ 4

    C.    This Proposal Comports With And Addresses This Court's Tort Claim
        Proposal Order ........................................................................ 6

II.   STATEMENT OF FACTS ................................................................ 9

    A.    Background Information Regarding The Debtors, Their Businesses,
        And Reasons For Filing Bankruptcy ...................................... 9

    B.    The Tort Claims ..................................................................... 10

    C.    Additional Information Regarding The Tort Claims (which are
        subject to the Proposal and the Tort Claim Proposal Order) .................... 12

        1.    The Goldman Action ...................................................... 12

        2.    The Wilson Action ......................................................... 13

        3.    The Chandler Action ...................................................... 13

        4.    The Pierce Action .......................................................... 14

        5.    The Howarth Action ....................................................... 15

        6.    The Kayle Action ........................................................... 15

        7.    The Byrne Action .......................................................... 16

    D.    The Projected Cost Of Claim Estimation ............................. 16

    E.    The Debtors' Bankruptcy Cases And Efforts To Resolve Tort Claims ...... 17

    F.    The Tort Claim Proposal Order ............................................ 18

III.  DISCUSSION OF STATUTORY FRAMEWORK AND CASELAW IN
     SUPPORT OF THE PROPOSAL ........................................... 19

    A.    Section 502(c) Requires That The Tort Claims Be Estimated ............ 19

        1.    The Tort Claims Are Unliquidated .................................. 21

i

2.      Awaiting Resolution Of The Tort Claims In Superior Courts
        Or Pursuant To Full-Blown Trials Would Unduly Delay And
        Significantly Increase the Cost Of The Administration Of The
        Debtors' Bankruptcy Cases ................................................................. 21

B.      The Bankruptcy Court Has Wide Discretion In Choosing The
        Method Of Estimating Claims Under 11 U.S.C. § 502(c), Even In the
        Context of Personal Injury And Wrongful Death Claims .......................... 24

        1.      This Court Has The Authority To Order Mediation........................ 24

        2.      This Court Has The Authority To Order Estimation Of The
                Tort Claims Pursuant To The Second Component Of The
                Proposal ......................................................................................... 25

C.      This Court Has The Authority To Make Binding Estimations For
        Voting And Plan Distribution Purposes ....................................................... 29

IV.     CONCLUSION ................................................................................................ 30

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Beaumont v. Durkay (In re Ford)*
   967 F.2d 1047 (5th Cir. 1992) ........................................................22

*Bittner v. Borne Chemical Co., Inc.*
   691 F.2d 134 (3d Cir. 1982)..............................................24, 25, 26, 27

*Falk v. Falk (In re Falk)*
   2013 WL 5405564 (B.A.P. 9th Cir. Sept. 26, 2013)................................27

*Foster v. Granite Broadcasting Corp. (In re Granite Broadcasting Corp.)*
   385 B.R. 41 (S.D. N.Y. 2008)........................................................28

*In re Aspen Limousine Serv., Inc.*
   193 B.R. 325 (Bankr. D. Colo. 1996) ...............................................24

*In re Baldwin-United Corporation*
   57 B.R. 751 (S.D. Ohio 1985) ........................................................30

*In re Continental Airlines, Inc.*
   57 B.R. 842 (Bankr. S.D. Tex. 1985) ...............................................23

*In re Corey*
   892 F.2d 829 (9th Cir. 1989) .....................................................23, 27

*In re Farley, Inc.*
   146 B.R. 748 (Bankr. N.D. Ill. 1992) ..............................................26

*In re Federated Dept. Stores, Inc.*
   328 F.3d 829 (6th Cir. 2003) ........................................................25

*In re Frontier Airlines, Inc.*
   137 B.R. 811 (D. Colo. 1992)....................................................20, 29

*In re Lane*
   68 B.R. 609 (Bankr. D. Hawaii 1986) ..............................................26

*In re Lionel L.L.C.*
   2007 WL 2261539 (S.D.N.Y. Aug. 3, 2007)....................................26, 29

*In re Quintana*
   107 B.R. 234 (B.A.P. 9th Cir. 1989).................................................21

*In re Rhead*
   179 B.R. 169 (Bankr. D. Ariz. 1995)................................................23

iii

*In re Roman Catholic Archbishop Of Portland In Oregon*
    339 B.R. 215 (Bankr. Or. 2006)................................................................20, 22, 28

*In re Roman Catholic Archbishop of Portland in Oregon*
    339 B.R. 223 .........................................................................................24

*In re Smith*
    389 B.R. ...............................................................................................28

*In re Sylvester*
    19 B.R. 671 (B.A.P. 9th Cir. 1982) ...........................................................21

*In re Thomson McKinnon Securities, Inc.*
    143 B.R. 612 (Bankr. S.D.N.Y. 1992) .......................................................27

*In re Trident Shipworks, Inc.*
    247 B.R. 513 (Bankr. M.D. Fla. 2000) ......................................................29

*In re Tsai*
    2014 WL 1154032 (Bankr. C.D. Cal. Mar. 19, 2014) .................................21

*In re Windsor Plumbing Supply Co., Inc.*
    170 B.R. 503 (Bankr. E.D.N.Y. 1994).................................................26, 27

*Interco Incorporated v. ILGWU Nat'l Retirement Fund (Matter of Interco, Inc.)*
    137 B.R. 993 (Bankr. E.D. Mo. 1992) ..................................................21, 29

*Mazzeo v. United States (In re Mazzeo)*
    131 F.3d 295 (2nd Cir. 1997) ...................................................................21

*Official Committee Of Asbestos Claimants v. G-I Holdings, Inc. (In re G-I Holdings, Inc.)*
    295 B.R. 211 (D. N.J. 2003) ...............................................................20, 27

*Smith v. Smith (In re Smith)*
    389 B.R. 912 (Bankr. D. Nev. 2008) .........................................................20

**FEDERAL STATUTES**

11 U.S.C. § 105(d) ....................................................................................25

11 U.S.C. § 341(a) ....................................................................................17

11 U.S.C. § 502 .........................................................................................19

11 U.S.C. § 502(c) .............................................................................. passim

11 U.S.C. § 1107 ..................................................................................9, 10

11 U.S.C. § 1108...................................................................................9, 10

28 U.S.C. § 157 ..........................................................................................................7

28 U.S.C. § 157(b)(2)(B) ............................................................................7, 8, 20, 27

28 U.S.C. § 157(b)(5) ...............................................................................7, 20, 28, 29

28 U.S.C. § 157(c) ...............................................................................................20, 28

**CALIFORNIA STATUTES**

Business & Professions Code § 17200, *et seq.* ......................................................15

California Health and Safety Code § 1430(b)......................................................16, 17

**OTHER STATUTES**

Cases of Action, Dependent Adult Abuse (Welfare & Institutions Code § 15600, *et seq.*)....15, 16

**FEDERAL RULES**

Fed.R.Bankr.P. 9014.................................................................................................25

Fed.R.Bankr.P. 9019...................................................................................................5

Fed.R.Bankr.P. 3018(a) ...........................................................................................20

Fed.R.Civ.P. 16(c)(2)(I) and (L)...............................................................................25

v

North American Health Care, Inc. ("NAHC") and Carmichael Care, Inc. ("CCI" and collectively with NAHC, the "Debtors"), debtors and debtors in possession in the above-referenced jointly–administered Chapter 11 bankruptcy cases hereby submit their Tort Claim Resolution Proposal (the "Proposal") pursuant to this Court's Tort Claim Proposal Order (Docket No. 200), entered on April 16, 2015.

## I.  INTRODUCTION

The Debtors' bankruptcy filings were precipitated by multiple tort claim actions brought against one or both of the Debtors in various state courts alleging wrongful death, elder abuse, medical malpractice, negligence and other causes of action.  The Debtors' goal since the filings of these cases has been to develop and obtain Court approval of an organized, coherent, and efficient claim liquidation and/or estimation process to address the tort claims asserted against the Debtors.  This Court has recognized that "the confirmation of a plan of reorganization will be difficult to achieve until these claims have been liquidated or estimated for purposes of distribution because they collectively constitute the lion's share of the claims against the Debtors' bankruptcy estates. Consequently, the liquidation or estimation of these claims is necessary to move this case forward." *See* Tentative Ruling, issued April 10, 2015, and adopted as the final ruling pursuant to the Tort Claim Proposal Order (Docket No. 200) entered on April 16, 2015 in connection with motion for relief from stay filed by Raymond K. Pierce, one of the tort claimants.

In order to address the need to liquidate or estimate for purposes of distribution the tort claims against the Debtors, this Court has ordered the Debtors to prepare and file a framework for liquidating or estimating for purposes of distribution all of the tort claim actions against them (with certain exceptions set forth in the Tort Claim Proposal Order) together with a discussion of the applicable statutory and case law authority supporting the adoption of such a framework.[1]

---

[1] The Debtors reserve their right to later include additional claims in the Tort Claim Resultion Proposal, if appropriate.

2

This Proposal sets forth the Debtors' proposed framework for estimating the "Tort Claims" (listed and defined below) for the purposes of voting **and** distribution.[2]

As discussed herein, not only is the estimation of the tort claims listed below appropriate, it is necessary for the efficient and effective administration of the Debtors' bankruptcy estates without undue delay.  Moreover, the law permits this Court and/or the District Court to fashion a summary procedure for estimating claims that will not require full-blown, multi-week trials, even in the context of personal injury and wrongful death claims.  *See* Discussion below.

A.    **The Claims.**

The tort claims at issue in this Proposal are the following claims, which are all contingent, unliquidated and disputed tort claims against one or both of the Debtors (the "Tort Claims"):

| Case Name | Current Venue | Description of Claims | Debtors Involved | Alleged Damages (if known) |
|---|---|---|---|---|
| Goldman, et al. v. Carmichael Care And Rehabilitation Center, et al. | Sacramento Superior Court | Elder abuse, fraud, negligent infliction of emotional distress, violation of patients' rights, wrongful death | NAHC and CCI | $10 million + |
| Wilson v. Carmichael Care And Rehabilitation Center | Sacramento Superior Court | Elder abuse, fraud, violation of patients' rights, wrongful death | NAHC and CCI | Unknown |
| Chandler, et al. v. Carmichael Care, Inc. | Sacramento Superior Court/Eastern District | Elder abuse, wrongful death, violation of resident's bill of rights, negligent infliction of emotional distress | NAHC and CCI | $10 million + |
| Pierce, et al. v. Carmichael Care, Inc. | Sacramento Superior Court | Negligence, abuse/neglect of dependent adult, | CCI | Unknown |

[2] Although this Court's Tort Claim Proposal Order does not require the Debtors to propose a framework for estimating the Tort Claims for voting purposes, the Debtors submit that the most practical approach is that, if this Court is inclined to adopt a framework for estimating claims for distribution purposes, such estimation should also be applied to votes on any plan or plans of reorganization proposed by the Debtors.

3

| Case Name | Current Venue | Description of Claims | Debtors Involved | Alleged Damages (if known) |
|-----------|---------------|----------------------|------------------|---------------------------|
| | | violation of patient's bill of rights, fraud/misrepresentation, unfair business practices, etc. | | |
| Howarth, et al. v. Cottonwood H.C., Inc., et al. | Sacramento Superior Court | Dependent adult abuse, unfair business practice, negligent infliction of emotional distress, violation of patients' bill of rights | NAHC | $4 million + |
| Kayle, et al. v. Lake Balboa Health Care Inc., et al. | United States District Court for the Central District of California | Elder abuse, violation of patient's bill of rights, wrongful death | NAHC | Unknown |
| Byrne, et al. v. P.T.C.H., Inc., et al. | United States District Court for the Central District of California | Elder abuse, Negligence, violation of California Health & Safety Code, willful misconduct, wrongful death | NAHC | Unknown |

**B.**    **The Proposal.**

The Debtors respectfully request that this Court adopt the following framework for estimating the Tort Claims for voting and distribution purposes, which framework is comprised of two primary components:

**(1)**    Within thirty (30) days following the entry of this Court's order approving a Proposal (the "Procedural Order"), the parties shall meet and confer with respect to the timing of mandatory, non-binding mediation of the Tort Claims.  Any claimant asserting a Tort Claim against one or both of the Debtors will be required to participate in good-faith in a nonbinding mediation of its Tort Claim upon a schedule that is mutually agreeable to the parties, but, in any event shall be completed within ninety (90) days following the entry of the Procedural Order (the "Mediation Period").  To the extent necessary, this mediation shall be for a minimum of two days or as long as is necessary to reach a settlement of the relevant Tort Claim, whichever is

4

shorter.  The parties may agree to participate in additional days of mediation, but are not obligated to do so.

The mediator will be chosen by agreement of the parties, but if the parties are unable to agree on the identity of the mediator, this Court will determine the identity of the mediator based upon the parties' recommendations to this Court.  At least seven days prior to the scheduled mediation, the claimant asserting a Tort Claim shall submit to the Debtors a statement indicating the monetary amount which the claimant will accept in full settlement and satisfaction of the Tort Claim, and the Debtors shall submit to the claimant a statement indicating the monetary amount which the Debtors will agree to treat as an allowed unsecured claim against the Debtors' bankruptcy estate or estates.

To the extent the parties are able to settle a Tort Claim, the Debtors will file a motion with this Court requesting Court approval of the settlement agreement pursuant to Bankruptcy Rule 9019.  If the parties are unable to settle, the second component of the Proposal will be employed.  The Debtors' bankruptcy estates will pay for the costs of the mediator, unless the mediator that is appointed provides his or her services free of charge.

**(2)**    The second component of the Proposal will only be employed if the first component does not result in the resolution of the Tort Claim.  The second component of the Proposal consists of the estimation of the Tort Claim for voting and distribution purposes pursuant to 11 U.S.C. § 502(c), as follows:

**a.**    No later than ten (10) days after the conclusion of the Mediation Period, if no mutually agreeable settlement has been reached, claimants asserting Tort Claims shall file with this Court a statement indicating whether they consent to the entry of final orders by this Court estimating their Tort Claims for the purposes of voting and distribution.  If the claimant does not consent to this Court's entry of final orders estimating the Tort Claims, then this Court shall submit findings of fact and conclusions of law to the United States District Court for the Central District of California, and the District Court shall enter a final order regarding the estimation of the Tort Claim at issue.

**b.** Thirty (30) days after the conclusion of the Mediation Period, claimants asserting Tort Claims shall file with this Court a brief in support of their respective Tort Claims, coupled with written declarations in support of their Tort Claims and documents in support of their Tort Claims.

**c.** Thirty (30) days after claimants submit their briefs and evidence, the Debtors shall file their brief in opposition to the Tort Claim at issue, coupled with written declarations in opposition to the Tort Claim and documents in support of the opposition to the Tort Claim, including any expert reports.

**d.** Fifteen (15) days after the Debtors submit their brief and evidence, the claimant asserting a Tort Claim may file a reply brief.

**e.** Fifteen (15) days after the deadline to file a reply brief, or as this Court's calendar may permit, this Court shall hold a hearing on the Tort Claim, at which time the Court shall either: (i) estimate the monetary amount of the Tort Claim on a final basis if the claimant has consented to the entry of a final order by the this Court, or (ii) if the claimant has not consented to the entry of a final order by this Court, make the requisite findings of fact and conclusions of law and submit them to the District Court, with a recommendation as to the estimation of the monetary amount of the Tort Claim by the District Court.

The entire Proposal process is estimated to take approximately one hundred eighty (180) days from entry of the Procedural Order.  The resolution of all of the Tort Claims pursuant to the Proposal shall run concurrently, subject only to the parties' and this Court's (or the District Court's) availability and schedules.

**C.**    **This Proposal Comports With And Addresses This Court's Tort Claim Proposal Order.**

This Court's Tort Claim Proposal Order provides that the Debtors' Proposal must address the following issues: **(1)** individual estimation of claims for purposes of distribution in this Court and estimation of claims in the aggregate for purposes of distribution in this Court; **(2)** the use of mediation as a substitute for, or preliminary to, the estimation of claims individually or in the aggregate or to litigation and trial in the District Court; **(3)** a split approach whereby all litigation

6

matters short of trial are conducted in this Court with trial being reserved for the District Court pursuant to 28 U.S.C. 157(b)(5); **(4)** any other proposed method for resolving and quantifying the claims consistent with 28 U.S.C. § 157 and other applicable law; **(5)** rough timetables for estimation, litigation and trial in the District Court and/or mediation; **(6)** provision for District Court approval of individual or aggregate estimation in compliance with 28 U.S.C. § 157(b)(2)(B); and **(7)** addressing the risk (or lack thereof) of inconsistent findings or determinations in the various personal injury trials as between the non-debtor defendants and the debtors.  The Proposal addresses all of these issues.

**First**, the Proposal provides for the individual mediation, and if mediation does not result in settlement, individual estimation of claims for purposes of voting and distribution, preferring an individualized approach to an aggregate approach, in order to provide each claimant the opportunity to individually mediate, assert, establish, and prove their alleged claim, without their claim being affected by the facts, circumstances, or estimation of other, unrelated claims.  The Debtors submit that an individualized approach will preserve each claimant's due process rights.

**Second**, the Proposal includes as a preliminary step, mandatory mediation of the Tort Claims.

**Third**, the second component of the Proposal (which applies if mediation is not successful), requires each claimant to file with this Court a statement indicating whether they consent to the entry of final orders by this Court estimating their Tort Claims for the purposes of voting and distribution.  If the claimant does not consent to this Court's entry of final orders estimating the Tort Claims, then the Debtors propose that this Court submit findings of fact and conclusions of law to the United States District Court for the Central District of California, and the District Court will enter a final order regarding the estimation of the Tort Claim at issue.

**Fourth**, the Proposal specifies the specific manner of estimating the Tort Claims if mediation is not successful.  Specifically, the Proposal requires that the claimants submit briefs in support of their respective Tort Claims, coupled with written declarations in support of their Tort Claims and documents in support of their Tort Claims, including expert reports.  The Debtors are then provided an opportunity to oppose the Tort Claims, and the claimants are

7

provided an opportunity to reply to the Debtors' opposition. Thereafter, the Debtors propose that this Court hold a hearing on the Tort Claim where this Court will either estimate the monetary amount of the Tort Claim on a final basis if the claimant has consented to the entry of a final order by the this Court, or (ii) if the claimant has not consented to the entry of a final order by this Court, submit proposed findings of fact and conclusions of law to the District Court to allow the District Court to estimate the monetary amount of the Tort Claim for voting and distribution purposes.

**Fifth,** this Proposal provides a rough estimate of the timeframe for estimating the Tort Claims. Specifically, the entire Proposal process is estimated to take approximately one hundred eighty (180) days from the entry of the Procedural Order. The resolution of all of the Tort Claims pursuant to the Proposal shall run concurrently, subject only to the parties' and this Court's (or District Court's) availability and schedules.

**Sixth**, as set forth above, this Proposal provides for District Court approval of the estimation of Tort Claims in compliance with 28 U.S.C. § 157(b)(2)(B) to the extent that claimants do not consent to the entry of final orders by this Court. In this regard, the individual estimation of Tort Claims is preferable in order to allow individual claimants the opportunity to either opt-in or opt-out of consenting to this Court's entry of final orders estimating the Tort Claims.

**Seventh**, the Proposal applies only to the Debtors, and not to non-debtor defendants. The Debtors submit that the risk of any inconsistent findings or determinations as between non-debtor defendants and the debtors is outweighed by the substantial time savings and benefits of estimating the Tort Claims in these bankruptcy estates for the limited purposes of voting and distributions in these bankruptcy cases. Nothing in the Procedural Order shall prevent the parties from mutually agreeing to include any claims asserted against non-debtor defendants in the mediation and/or any of the other steps applicable to the Proposal.

For the reasons set forth herein, the Debtors respectfully request that this Court adopt the Proposal and grant such further relief as this Court deems just and proper.

## II.    STATEMENT OF FACTS

**A.    Background Information Regarding The Debtors, Their Businesses, And Reasons For Filing Bankruptcy.**

On February 6, 2015, the Debtors each filed voluntary petitions under Chapter 11 of the Bankruptcy Code.  Since the commencement of their cases, the Debtors have been operating their businesses as debtors in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.[3]

CCI is the operator of a skilled nursing facility known as Rosewood Post-Acute Rehabilitation (the "Rosewood Facility"). The Rosewood Facility is licensed by the California Department of Public Health.  NAHC provides services to CCI pursuant to a Services Agreement between NAHC and CCI.  Specifically, pursuant to the Services Agreement, NAHC provides personnel to CCI as necessary for the business of the Rosewood Facility.  For example, NAHC provides to the Rosewood Facility bookkeeping and accounting services, social media services, supply procurement services, record storage services, payroll services, insurance procurement services, information technology services, human resource services, and other peer review support services.[4]

NAHC provides essential services to 36 facilities, including the Rosewood Facility. NAHC is a highly experienced provider of services to skilled nursing facilities, and its principal place of business is in Dana Point, California.[5]

The Rosewood Facility provides 24 hour, 7 days a week and 365 days a year care to patients who reside at the Rosewood Facility.  The Rosewood Facility currently has approximately 107 patients, and is staffed by approximately 184 employees.  The Rosewood

---

[3] Declaration of Wylie Strout ("Strout Declaration"), ¶¶ 2, 5.
[4] *Id.*, ¶ 6.
[5] *Id.*, ¶ 7.

9

Facility has 112 beds.  NAHC charges CCI service fees in connection with the services NAHC provides to the Rosewood Facility.[6]

The Debtors' bankruptcy filings were necessitated by the barrage of alleged medical malpractice and other lawsuits filed against the Debtors, claiming damages in the millions of dollars against the Debtors, and the aggressive litigation tactics of the plaintiffs in these lawsuits that have diverted the Debtors' resources and focus away from operating their businesses.  The Debtors deny any liability with respect to these lawsuits.  The Rosewood Facility has been operated according to exacting standards and the highest level of patient care.  Indeed, the Rosewood Facility continues to provide respected, Five-Star (as rated by CMS) care for its patients, and the patient care ombudsman appointed in CCI's case has issued her first interim report (Docket No. 167) and second interim report (Docket No. 261), which find that the quality of care at CCI meets or exceeds all required standards.[7]

Despite this record of achievement, certain plaintiffs' counsel have targeted the Debtors and have relentlessly pursued what they perceive to be potential "deep pockets" for recovery.  However, had the Debtors not filed for bankruptcy protection, and had plaintiffs with disputed claims continued their unending litigation attacks against the Debtors, or obtained their threatened judgments, the inevitable result would have been that the Debtors would have been forced to close their businesses.  The Debtors, after substantial consideration of possible alternatives, substantial efforts to settle disputes and litigation claims, and careful consideration of the effect of the bankruptcy filings on their businesses, determined that the most prudent, proactive and responsible course of action in order to protect their assets and the interests of their creditors, was to file for bankruptcy protection.[8]

**B.**    **The Tort Claims.**

One or both of the Debtors is a party to eleven (11) still pending pre-petition lawsuits, as follows (the seven lawsuits that are in bold typeface are the Tort Claims which are the subject

---

[6] *Id.*, ¶8.

[7] *Id.*, ¶ 9.

[8] *Id.*, ¶ 10.

of the Proposal, and the remaining four lawsuits that are not in bold typeface are not the subject
of the Proposal):

| Case Name | Current Venue | Description of Claims | Debtors Involved | Alleged Damages (if known) |
|---|---|---|---|---|
| Zagon et al. v. Summerville at Hazel Creek, LLC, et al. (the "Zagon Action") | Sacramento Superior Court | Elder abuse, fraud, negligent infliction of emotional distress, violation of patients' rights, wrongful death | NAHC and CCI | $10 million + |
| **Goldman, et al. v. Carmichael Care And Rehabilitation Center, et al. (the "Goldman Action")** | **Sacramento Superior Court** | **Elder abuse, fraud, negligent infliction of emotional distress, violation of patients' rights, wrongful death** | **NAHC and CCI** | **$10 million +** |
| **Wilson v. Carmichael Care And Rehabilitation Center (the "Wilson Action")** | **Sacramento Superior Court** | **Elder abuse, fraud, violation of patients' rights, wrongful death** | **NAHC and CCI** | **Unknown** |
| **Chandler, et al. v. Carmichael Care, Inc. (the "Chandler Action")** | **Sacramento Superior Court** | **Elder abuse, wrongful death, violation of resident's bill of rights, negligent infliction of emotional distress** | **NAHC and CCI** | **$10 million +** |
| **Pierce, et al. v. Carmichael Care, Inc. (the "Pierce Action")** | **Sacramento Superior Court** | **Negligence, abuse/neglect of dependent adult, violation of patient's bill of rights, fraud/misrepresentation, unfair business practices, etc.** | **NAHC and CCI** | **Unknown** |
| **Howarth, et al. v. Cottonwood H.C., Inc., et al. (the "Howarth Action")** | **Sacramento Superior Court** | **Dependent adult abuse, unfair business practice, negligent infliction of emotional distress, violation of patients' bill of rights** | **NAHC** | **$4 million +** |

11

| Case Name | Current Venue | Description of Claims | Debtors Involved | Alleged Damages (if known) |
|---|---|---|---|---|
| **Kayle, et al. v. Lake Balboa Health Care Inc., et al. (the "Kayle Action")** | **United States District Court for the Central District of California** | **Elder abuse, violation of patient's bill of rights, wrongful death** | **NAHC** | **Unknown** |
| Jaramillo v. Ramona Nursing & Rehabilitation, et al. | Los Angeles Superior Court | Harassment, discrimination, etc. | NAHC | $304,000+ |
| Ramirez, et al. v. North American Health Care, Inc., et al. | Orange County Superior Court | Elder abuse, negligence, wrongful death | NAHC | $10 million |
| **Byrne, et al. v. P.T.C.H., Inc., et al. (the "Byrne Action")** | **United States District Court for the Central District of California** | **Elder abuse, Negligence, violation of California Health & Safety Code, willful misconduct, wrongful death** | **NAHC** | **Unknown** |
| American Zurich Insurance Company v. North American Health Care Inc., etc. | United States District Court for the Central District of California | Breach of contract | NAHC | Unknown |

Alleged damages, to the extent known, total more than $44 million.[9]

C.    **Additional Information Regarding The Tort Claims (which are subject to the Proposal and the Tort Claim Proposal Order).**

1.    The Goldman Action.

The Goldman Action is pending in the Sacramento Superior Court but is stayed as to the Debtors.  There are five named defendants in the Goldman Action, comprised of CCI, NAHC, John Sorensen, Sunbridge Healthcare Corp. (which the claimant alleges is controlled by CCI),

---

[9] *Id.*, ¶ 12.

and Regency Health Services, Inc. (which the claimant alleges is controlled by CCI). There is a civil trial assignment hearing scheduled in the Goldman Action for October 26, 2015.[10]

To date, the Debtors have incurred approximately $166,000 in connection with the Goldman Action. The Debtors estimate that trial in the Sacramento Superior Court will cost at least $500,000 for the Debtors' attorneys, and $100,000 for the Debtors' experts. Thus, the Debtors estimate that their cost to try the Goldman Action in Sacramento will likely be in excess of $600,000.[11]

**2.      The Wilson Action.**

The Wilson Action is pending in the Sacramento Superior Court but is stayed as to the Debtors. There are five named defendants in the Wilson Action, comprised of CCI, NAHC, John Sorensen, Sunbridge Healthcare Corp. (which the claimant alleges is controlled by CCI), and Regency Health Services, Inc. (which the claimant alleges is controlled by CCI). At this time, there is no trial date or trial assignment hearing scheduled in the Wilson Action.[12]

To date, the Debtors have incurred approximately $36,000 in connection with the Wilson Action. The Debtors estimate that trial in the Sacramento Superior Court will cost at least $350,000 for the Debtors' attorneys, and $50,000 for the Debtors' experts. Thus, the Debtors estimate that their cost to try the Wilson Action in Sacramento will likely be in excess of $400,000.[13]

**3.      The Chandler Action.**

The Chandler Action is pending in the Sacramento Superior Court but is stayed as to the Debtors. There are three named defendants in the Chandler Action, comprised of CCI, NAHC, and John Sorensen. There is a civil trial assignment hearing scheduled in the Chandler Action for August 11, 2015.[14]

---

[10] *Id.*, ¶ 13.
[11] *Id.*, ¶ 14.
[12] *Id.*, ¶ 15.
[13] *Id.*, ¶ 16.
[14] *Id.*, ¶ 17.

To date, the Debtors have incurred approximately $213,000 in connection with the Chandler Action.  The Debtors estimate that trial in the Sacramento Superior Court will cost at least $500,000 for the Debtors' attorneys, and $150,000 for the Debtors' experts.  Thus, the Debtors estimate that their cost to try the Chandler Action in Sacramento will likely be in excess of $650,000.[15]

### 4.    The Pierce Action.

The Pierce Action is pending in the Sacramento Superior Court but is stayed as to the Debtors.  Pierce filed his original complaint on or about April 19, 2012, naming as defendants CCI, Maria G. Casarez, and Rx Staffing And Home Care, Inc.  Pierce filed his second amended complaint on or about April 2, 2013, naming as defendants CCI, Maria G. Casarez, and Rx Staffing And Home Care, Inc.  On August 22, 2013, Pierce filed an "Amendment To Complaint To Substitute True Name Of "Doe" Defendants" naming NAHC and John Sorensen as defendants.  Pierce filed his TAC on December 16, 2014.  Mr. Sorensen's name does not appear in the TAC (the TAC was never amended to indicate what actions Mr. Sorensen personally took in connection with Pierce's claims), and the only allegation made directly against Mr. Sorensen (which was made Pierce's relief from stay motion but not his complaint) is that "Defendant John Sorensen controls, operates, and is an owner of the Rosewood facility and 35 other nursing home facilities and controls and operates both Debtors)."  The Pierce Action has been pending for approximately three years, and a trial has not even commenced.[16]

To date, the Debtors have paid approximately $244,356 in connection with the Pierce Action and owe their attorneys and experts approximately $23,303.  The Debtors estimate that trial in the Sacramento Superior Court will cost at least $250,000 for the Debtors' attorneys, and $100,000 for the Debtors' experts.  Thus, the Debtors estimate that their cost to try the Pierce Action in Sacramento will likely be in excess of $350,000.[17]

---

[15] *Id.*, ¶ 18.

[16] *Id.*, ¶ 19.

[17] *Id.*, ¶ 20.

### 5.    The Howarth Action.

The Howarth Action is pending in the Sacramento Superior Court but is stayed as to NAHC.  CCI is not a party to the Howarth Action.  The complaint was filed on September 3, 2014.  The complaint list four Cases of Action, Dependent Adult Abuse (Welfare & Institutions Code section 15600, *et seq*.), Unfair Business Practice (Business & Professions Code section 17200, *et seq*.) Negligent Infliction of Emotional Distress, and Violations of Patients' Bill of Rights.  The primary defendant in the Howarth Action appears to be Cottonwood H.C., Inc., dba Cottonwood Health Care Center ("Cottonwood").  NAHC provides services to Cottonwood.  Mr. Sorensen is also a defendant in the Howarth Action.  The complaint alleges that NAHC and John Sorensen are liable for the wrongdoing of Cottonwood, and they are the alter ego of Cottonwood.  Such contentions are patently false.[18]

To date, the Debtors have incurred approximately $25,000 in connection with the Howarth Action.  The Debtors estimate that trial in the Howarth Action will cost at least $150,000 for the Debtors' attorneys, and $50,000 for the Debtors' experts.  Thus, the Debtors estimate that their cost to try the Howarth Action in Sacramento will likely be in excess of $200,000.[19]

### 6.    The Kayle Action

The Kayle Action is pending in the Los Angeles County Superior Court but is stayed as to NAHC.  CCI is not a party to the Kayle Action.  The complaint was filed on January 22, 2013 and lists three Causes of Action: Elder Abuse (Welfare & Institutions Code section 15600, *et seq*.), Violation of Patients' Bill of Rights and Wrongful Death.  The primary defendant in the Kayle Action appears to be Lake Balboa Health Care, Inc. dba Lake Balboa Care Center ("Lake Balboa").  NAHC provides services to Lake Balboa. The complaint alleges that NAHC is liable for the wrongdoing of Lake Balboa as its alter ego.  Such contentions are patently false.[20]

To date, the defendants in the Kayle Action have incurred approximately $150,287.65 in

---

[18] *Id.*, ¶ 21; *see also*, Declaration of John L. Sorensen filed concurrently herewith.

[19] *Id.*, ¶ 22.

[20] *Id.*, ¶ 23.

connection with the Kayle Action.  The Debtors estimate that trial in the Kayle Action will cost at least $245,000.00 for the defendants and $50,000.00 for the defendants' experts, though such expenses are proposed to be paid by the nondebtor facility which is a defendant in the matter or from insurance proceeds.  Nevertheless, the Debtors estimate that the cost to try the Kayle Action pursuant to a full-blown trial will likely be in excess of $295,000.00.[21]

### 7.      The Byrne Action

The Byrne Action is pending in the United States District Court – Central District of California but is stayed as to NAHC.  CCI is not a party to the Byrne Action.  The complaint was filed on January 7, 2013 and lists five Causes of Action: Elder Abuse (Welfare & Institutions Code section 15600, *et seq.*), Negligence, Violation of California Health and Safety Code §1430(b), Willful Misconduct and Wrongful Death.  The primary defendant in the Byrne Action appears to be P.T.C.H., Inc. dba Palm Terrace Care Center ("Palm Terrace").  NAHC provides services to Palm Terrace. The complaint alleges that NAHC is liable for the wrongdoing of Palm Terrace as its alter ego; however, this is not supported by the evidence.[22]

To date, the defendants in the Byrne Action have incurred approximately $141,322.26 in connection with the Byrne Action.  The Debtors estimate that trial in the Byrne Action will cost at least $245,000.00 for the defendants and $50,000.00 for the defendants' experts, though such expenses are proposed to be paid by the nondebtor facility which is a defendant in the matter or from insurance proceeds.  Nevertheless, the Debtors estimate that the cost to try the Byrne Action pursuant to a full-blown trial will likely be in excess of $295,000.00.[23]

### D.      The Projected Cost Of Claim Estimation.

The Debtors estimate that the cost to estimate the value of the Tort Claims pursuant to the Proposal will be a fraction of the amounts estimated above, because the Proposal is meant to be summary in nature, and involves estimating the Tort Claims against the Debtors by reviewing briefs and written witness declarations and other documentary evidence, and based on such

---

[21] *Id.*, ¶ 24.
[22] *Id.*, ¶ 25.
[23] *Id.*, ¶ 26.

information, estimating the claim.  Under any summary method of claim estimation, the Debtor estimates that the timing and cost of claim estimation will be substantially less than conducting multi-week jury trials after months of discovery and pre-trial litigation.  Indeed, the Debtors estimate that the *entire* Tort Claim estimation procedure will last approximately 180 days.[24]

E.    **The Debtors' Bankruptcy Cases And Efforts To Resolve Tort Claims.**

Since the commencement of their bankruptcy cases, the Debtors have fulfilled their fiduciary obligations to the estates, complied with the requirements of the Office of the United States Trustee, and attended and completed their initial debtor interview.  The Debtors have successfully taken the steps debtors in possession typically take during a Chapter 11 case, including filing their application to employ bankruptcy counsel, and filing and obtaining Court approval of emergency "first day" motions in connection with the Debtors' operations.  The Debtors have entered into a stipulation with the United States Trustee in connection with a patient care ombudsman in CCI's case.  The Debtors filed their Schedules of Assets and Liabilities and Statements of Financial Affairs on March 9, 2015.  The Debtors attended and concluded their Section 341a meeting of creditors on March 12, 2015. [25]

The Debtors are presently embroiled in litigation in the Zagon Action.  This Court granted stay relief in the Zagon Action and trial in that matter is under way.  The Zagon Action is not subject to the Proposal.[26]

Additionally, NAHC has conducted mediation in the action titled *Guadalupe Jaramillo v. Ramona Nursing & Rehabilitation; North American Health Care, Inc.*, pending in the Superior Court of the State of California for the County of Los Angeles (the "Los Angeles Superior Court") bearing Case No. BC567286 (the "Jaramillo Action").  This Court approved the

---

[24] *Id.*, ¶ 27.  The Debtors also have the practical problem that its attorneys cannot be engaged in multiple trials simultaneously.  Counsel will need to prepare for and litigate each of the Tort Claims in some sort of order to be established by the relevant trial courts.  Given the multi-week nature of each trial, the Debtors believe it will take substantially longer than the 180 days contemplated by the Proposal to otherwise resolve all of the Tort Claims.

[25] *Id.*, ¶ 28.

[26] *Id.*, ¶ 29.

stipulation between NAHC and Guadalupe Jaramillo to modify the automatic stay for the limited purpose of conducting mediation in the Jaramillo Action in the Los Angeles Superior Court. Such mediation resulted in a settlement which is being documented. The Jaramillo Action ***is not*** subject to the Proposal.[27]

Similarly, the Debtors have stipulated to conduct mediation with the plaintiff in the Chandler Action. Due to scheduling issues in the Zagon Action, the Debtors were unable to participate in mediation during the originally agreed upon mediation date, and the Debtors are attempting to coordinate and obtain a new mediation schedule for the Chandler Action. This has been difficult and complicated as a result of the pending Zagon Action. This is an example of the undue delay the Debtors would face in administering their bankruptcy cases if all of the Tort Claims were allowed to proceed to judgment in their various original venues. While the Proposal provides for the concurrent resolution of the Tort Claims, such would not be the case if each of the Tort Claims were adjudicated in their original venues pursuant to all-out trials. The Chandler Action ***is*** subject to the Proposal.[28]

Finally, the Debtors and the plaintiffs in the Goldman Action and Howarth Action have attempted to agree upon the terms of mediations, but to date, no final agreement regarding mediation has been reached. The Goldman Action and the Howarth Action ***are*** subject to the Proposal.[29]

## F.    The Tort Claim Proposal Order.

The Debtors' goal since the filing of these cases has been to develop and obtain Court approval of an organized, coherent, and efficient claim liquidation and/or estimation process to address the tort claims asserted against the Debtors. This Court has recognized that "the confirmation of a plan of reorganization will be difficult to achieve until these claims have been liquidated or estimated for purposes of distribution because they collectively constitute the lion's share of the claims against the Debtors' bankruptcy estates. Consequently, the liquidation or

---

[27] *Id.*, ¶ 30.
[28] *Id.*, ¶ 31.
[29] *Id.*, ¶ 32.

estimation of these claims is necessary to move this case forward." *See* Tentative Ruling, issued April 10, 2015, and adopted as the final ruling pursuant to the Tort Claim Proposal Order in connection with motion for relief from stay filed by Raymond K. Pierce, one of the tort claimants whose Tort Claim is subject to the Proposal.[30]

As set forth in the Tort Claim Proposal Order, this Court has recognized that "if the state court action is still in the discovery stage and trial, verdict and judgment are months or years away, the prosecution of Debtors' chapter 11 cases could be seriously delayed were this Court to await liquidation of the claim in state court." *See* Tort Claim Proposal Order.  Here, all of the Tort Claims which are the subject of this Proposal are still many months away from resolution in the state court system, and will cost the Debtors hundreds of thousands of dollars to resolve through standard litigation.[31]

## III.    DISCUSSION OF STATUTORY FRAMEWORK AND CASELAW IN SUPPORT OF THE PROPOSAL

### A.    Section 502(c) Requires That The Tort Claims Be Estimated.

Pursuant to 11 U.S.C. § 502(c), contingent *or* unliquidated claims **must** be estimated when failure to do so would unduly delay the administration of the case.   Section 502(c) provides, in pertinent part:

> "There shall be estimated for purpose of allowance under this section –
>
> (1)    ***any contingent or unliquidated claim***, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case..."

11 U.S.C. § 502(c) (emphasis added).

The estimation provisions of Section 502 are mandatory in nature, and impose upon this Court an affirmative duty to estimate ***any*** contingent or unliquidated claim, the resolution of

---

[30] *Id.*, ¶ 33.
[31] *Id.*, ¶ 34.

1    which would unduly delay the closing of the case.  *See In re Frontier Airlines, Inc.*, 137 B.R. 811

2    (D. Colo. 1992).[32]  Moreover, Section 502(c) does not restrict the types of claims that must be

3    estimated.  That is, there is no exception to estimation for personal injury or wrongful death

4    claims.  Indeed, estimation of such claims for plan confirmation purposes constitutes a core

5    proceeding pursuant to 28 U.S.C. § 157(b)(2)(B), and although estimation for distribution

6    purposes constitutes a non-core matter, *see* 28 U.S.C. § 157(b)(2)(B), "[s]ection 157(b)

7    generally, and section 157(b)(5) in particular, do not create or destroy jurisdiction.  They simply

8    allocate the jurisdiction already conferred upon federal courts in an effort to answer the question

9    as to whether a bankruptcy court may enter a binding judgment, or whether it must make

10   proposed findings of fact and conclusions of law for the district court's use." *Smith v. Smith (In

11   re Smith)* 389 B.R. 912 (Bankr. D. Nev. 2008).

12        Thus, either by consent of the parties (which is an option under the Proposal) or by way

13   of this Court's submission of proposed findings of fact and conclusions of law to the District

14   Court (which is what the Proposal provides if the parties do not consent to the entry of final

15   orders by this Court), this Court still has authority and jurisdiction to, and must, participate in the

16   Tort Claim estimation process for distribution purposes. *See Official Committee Of Asbestos

17   Claimants v. G-I Holdings, Inc. (In re G-I Holdings, Inc.)*, 295 B.R. 211, 218 (D. N.J. 2003)

18   (stating in the context of asbestos litigation that "if the Bankruptcy Court determines that the

19   estimation is a core proceeding, then it may conduct the proceeding and enter a final order.  To

20   the extent that the determination is a non-core proceeding…the Bankruptcy Court can

21   recommend the estimation method to this Court pursuant to 28 U.S.C. § 157(c)"); *In re Roman

22   Catholic Archbishop Of Portland In Oregon*, 339 B.R. 215 (Bankr. Or. 2006) (bankruptcy court

23   acknowledged its ability to estimate personal injury claims and provide recommendations to

24   district court regarding manner of estimation; disagreed that estimation of personal injury cases

---

26   [32]  Moreover, pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure,
27   "[n]otwithstanding objection to a claim or interest, the court after notice and hearing may
     temporarily allow the claim or interest in an amount which the court deems propose for the
28   purpose of accepting or rejecting a plan."

would even require mini-trials, and indicated willingness to explore methods for individualizing the estimation process, and providing examples of potential methods).

### 1.    <u>The Tort Claims Are Unliquidated</u>.

When considering whether a claim is unliquidated, a court generally looks to whether the claim's value has been determined or the relative ease with which that value can be determined. *Mazzeo v. United States (In re Mazzeo)*, 131 F.3d 295, 304 (2nd Cir. 1997) (stating that if the value of a claim depends on a future exercise of discretion, not restricted by specific criteria, the claim is unliquidated). Courts in the Ninth have defined "liquidated claim" as a claim wherein the amount due can be readily determined with precision. *In re Sylvester*, 19 B.R. 671, 673 (B.A.P. 9th Cir. 1982) (stating that tort claims requiring proof as to liability, reasonable value and damages are not considered "liquidated"); *In re Quintana*, 107 B.R. 234, 238 (B.A.P. 9th Cir. 1989); *In re Tsai*, 2014 WL 1154032, at *2 (Bankr. C.D. Cal. Mar. 19, 2014) (pre-petition, unadjudicated tort claims are unliquidated because they are not subject to ready determination and precision). Based on this definition, the Tort Claims are unliquidated and therefore subject to estimation by the Bankruptcy Court under Section 502(c).

### 2.    <u>Awaiting Resolution Of The Tort Claims In Superior Courts Or Pursuant To Full-Blown Trials Would Unduly Delay And Significantly Increase the Cost Of The Administration Of The Debtors' Bankruptcy Cases</u>.

Under Section 502(c), estimation is appropriate where liquidation of a claim would "unduly delay" the administration of a debtor's case. Undue delay is not defined in the Bankruptcy Code, "rather, it is a problem 'whose solution ultimately rests on the exercise of judicial discretion in light of the circumstances of the case, particularly the probable duration of the liquidation process as compared with the future uncertainty due to the contingency in question.'" *Interco Incorporated v. ILGWU Nat'l Retirement Fund (Matter of Interco, Inc.)*, 137 B.R. 993, 997 (Bankr. E.D. Mo. 1992) (finding that referral of claims to arbitration which debtor indicated would take more than a year to complete, as opposed to claim estimation, would cause undue delay), *quoting* 3 *Collier's on Bankruptcy* ¶502.03 (15th Ed. 1991). Thus, a claim unduly delays administration of the bankruptcy estate where the liquidation of the claim in the original

court would unnecessarily delay distribution to holders of allowed claims. *In re Roman Catholic Archbishop of Portland in* Oregon, 339 B.R. at 222 (recognizing that tort claims must be estimated when estimation would avoid undue delay in moving case forward toward confirmation).

Section 502(c) helps a court "avoid the need to await the resolution of outside lawsuits to determine issues of liability or amount owed by means of anticipating and estimating the likely outcome of these actions." *Beaumont v. Durkay (In re Ford)*, 967 F.2d 1047, 1053 (5th Cir. 1992) (while declining to estimate a claim on the basis that the non-tort claim was liquidated and not contingent, acknowledging that inability to estimate claim frustrated section 502(c)(1)'s goal of accelerated payments to creditors). In addition, it promotes the "fair distribution to creditors through a realistic assessment of uncertain claims." *Id.* (stating that estimation is designed to avoid the need to await the resolution of outside lawsuits to determine issues of liability or amount owed by means of anticipating and estimating the likely outcome of those actions).

The Tort Claims constitute the lion's share of claims against the Debtors' estates. There is no practical manner for the Debtors to administer their bankruptcy cases, propose and tabulate votes on plans, and ultimately make distributions, until the Tort Claims are liquidated or estimated. The Tort Claims which are the subject of the Proposal are in relatively early stages of adjudication in their original venues. Trial is not imminent, and in most cases has not even been set. In some circumstances, the matters remain subject to demurrer or other pre-trial proceedings. In such circumstances, estimation is appropriate. *See In re Roman Catholic Archbishop of Portland in* Oregon, 339 B.R. at 222 (finding that estimation is appropriate where there were numerous unliquidated child abuse claims in varying stages of liquidation, a significant number of which were at the beginning of the liquidation process).

Additionally, forcing the Debtors to spend substantial funds litigating each and every Tort Claim in state courts over an unspecified and unascertainable time period would constitute a substantial waste of the resources of these estates, and cause an undue delay in the administration of the Debtors' bankruptcy estates.

Under these circumstances, the Debtors submit that it is appropriate for the Court to adopt the Proposal and estimate the Tort Claims pursuant to the Proposal, as soon as possible, in order to ensure that the administration of the Debtors' bankruptcy cases is not unduly delayed. *See In re Rhead*, 179 B.R. 169, 172-73 (Bankr. D. Ariz. 1995) (where a reorganization depends on resolution of an unliquidated claim, proceedings other than estimation would cause undue delay). While the claim at issue in *In re Rhead* was a claim based on contract, the rationale for estimating that claim equally applies in the context of tort claims, perhaps even more so, given the entirely unliquidated and disputed nature of the Tort Claims at issue in this case. *See id.*

Estimation of the Tort Claims will facilitate the most efficient, equitable and orderly conclusion of the Debtors' bankruptcy cases. *See In re Continental Airlines, Inc.*, 57 B.R. 842 (Bankr. S.D. Tex. 1985) (estimation process of section 502(c) for numerous litigation claims was most appropriate, efficient and equitable method of concluding Chapter 11 case in orderly manner, and most effective method to accomplish statutory purpose in advancing ratable distribution of assets).[33] Indeed, given that the Tort Claims are all stayed, unless they are estimated, effectuation and implementation of the terms of a plan or plans will be not only be substantially delayed but will be impossible while the validity and extent of such Tort Claims are litigated. *In re Corey*, 892 F.2d 829 (9th Cir. 1989) (court could estimate claims of creditors who had voted against proposed plan of reorganization, given highly speculative nature of claims and undue delay which would otherwise result in confirmation of proposed plan); *In re Continental Airlines*, 57 B.R. at 844 (estimation was appropriate where liquidation of employee claims "would involve the unnecessary expenditure of enormous amounts of time, effort and money, by way of attorneys' fees inherently incurred in such litigation").

---

[33] *In re Continental Airlines, Inc.* involved employee wage and labor claims which threatened to delay distributions to creditors in that case. *Id.* While the nature of the claims in that case is different than the Tort Claims in these cases, the threat is the same – there are more than half a dozen undetermined and disputed lawsuits that must be addressed before these bankruptcy cases can be fully administered. Given the status of the Tort Claims, estimation is the only practical solution to this problem.

**B.**  **The Bankruptcy Court Has Wide Discretion In Choosing The Method Of Estimating Claims Under 11 U.S.C. § 502(c), Even In the Context of Personal Injury And Wrongful Death Claims.**

Section 502(c) does not specify any particular procedure for the estimation of contingent or unliquidated claims.  Here, estimating the Tort Claims in summary fashion will allow this Court (and/or the District Court) to avail itself of the determination of any matters already made in the relevant trial court(s) – it will not have to "reinvent the wheel."  Importantly, a court estimating the Tort Claims is not required to conduct full-blown trials to estimate the Tort Claims.  Bankruptcy courts have broad discretion to fashion estimation procedures using whatever method is best suited to the particular case at hand.  *Bittner v. Borne Chemical Co., Inc.,* 691 F.2d 134, 135 (3d Cir. 1982) (Third Circuit Court of Appeals affirmed bankruptcy courts estimation of tortious interference claims of shareholders at zero based on methodology of evaluating the underlying merits of the state court action); *In re Aspen Limousine Serv., Inc.*, 193 B.R. 325 (Bankr. D. Colo. 1996) (holding court should choose best method for estimation in light of particular circumstances and affirming bankruptcy court's choice of hearing through offers of proof in connection with business tort claims); *In re Roman Catholic Archbishop of Portland in Oregon*, 339 B.R. 223 (indicating that an individualized estimation process that would *not* require mini-trials for every personal injury claim alleged in that case is a potential manner of claim estimation).  The Proposal sets forth two components for estimating, resolving and liquidating the Tort Claims, and this Court has the authority to order the use of those components in these cases.

      **1.**  **This Court Has The Authority To Order Mediation.**

The first component of the Proposal involves nonbinding, but mandatory, mediation.  Courts have the authority to mandate alternative dispute resolution procedures, such as nonbinding mediation, in connection with the estimation, resolution and liquidation of tort claims. *See Gimme Shelter: The Use of Alternative Dispute Resolution Procedures to Resolve Tort Claims in Bankruptcy*, 18 JBKRLP 1 ART. 2, Norton Journal of Bankruptcy Law and Practice, January 2009, Section B.2., discussing the bankruptcy cases of *Greyhound Lines* and

*Best Products*, and the usage of nonbinding, but mandatory, mediation procedures to resolve claims, including personal injury claims. *See also In re Federated Dept. Stores, Inc.*, 328 F.3d 829, 834-36 (6th Cir. 2003) (holding that bankruptcy court did not abuse discretion in staying prosecution of claims pending bankruptcy court ordered alternative dispute resolution procedures).

Indeed, this Court's Local Bankruptcy Rules provide this Court with the authority to *sua sponte* refer any contested matter or other dispute in a bankruptcy case to mediation, over the objection of the parties. *See* Local Bankruptcy Rule Appendix III, *Adoption Of Mediation Program For Bankruptcy Cases And Adversary Proceedings* (Third Amended General Order No. 95-01); *see also*, 11 U.S.C. 105(d), which grants this Court specific authority to issue any order necessary to "ensure that the case is handled expeditiously and economically."[34]  There is no requirement that a claimant settle its Tort Claim pursuant to mediation, as it is nonbinding. Rather, the Debtors propose only that a claimant be required to participate, in good faith (as will the Debtors), in mediation of its Tort Claim.

## 2.    This Court Has The Authority To Order Estimation Of The Tort Claims Pursuant To The Second Component Of The Proposal.

The second component of the Proposal would be employed if mediation does not result in a settlement of the Tort Claim.  The second component of the Proposal involves briefing and submission of evidence in written format to a court for estimation purposes.

When estimating a claim, an estimating court is limited only by the legal rules which govern the ultimate value of the claim.  *Bittner*, 691 F.2d at 135-36; *(Brints Cotton Mktg., Inc.)*, 737 F.2d 1338, 1341 (5th Cir. 1984)The process by which a claim is estimated need not be

---

[34] Moreover, this Court has the authority to apply Rule 16(c)(2)(I) and (L) of the Federal Rules of Civil Procedure to this matter pursuant to Rule 9014 of the Federal Rules of Bankruptcy Procedure.  Pursuant to Rule 16(c)(2)(I) and (L), this court may consider and take appropriate action on the following matters…(I) settling the case and using special procedures to assist in resolving the dispute when authorized by statute or local rule…and (L) adopting special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems.  Thus, pursuant to these provisions of the Federal Rules, this Court has the authority to order mediation.

lengthy or involved – it certainly is not required to involve a full-blown, multi-week or months of trial.[35] "The methods used by courts have run the gamut from summary trials to full-blown evidentiary hearings to a mere review of pleadings, briefs, and a one-day hearing involving oral argument of counsel." *In re Windsor Plumbing Supply Co., Inc.*, 170 B.R. 503, 520 (Bankr. E.D.N.Y. 1994) (citations omitted) (bankruptcy court estimated numerous claims, including fraud and misrepresentation claims, by reviewing pleadings and written evidence submitted by parties, and making a ruling on such documents.

For example, in *In re Lane*, 68 B.R. 609, 613 (Bankr. D. Hawaii 1986), where the claimants at issue contended they had a right to a jury trial in connection with their contractual and tort claims, the bankruptcy court simply reviewed the pleadings and briefs of the parties involved.[36] As the court of appeals held in *Bittner*, the "principal consideration [in determining the method for estimating a claim under § 502(c)] must be an accommodation to the underlying purposes of the Bankruptcy Code. It is conceivable that in rare and unusual cases arbitration or even a jury trial on all or some of the issues may be necessary to obtain a reasonably accurate evaluation of the claims [citation omitted]. Such methods, however, usually will run counter to the efficient administration of the bankrupt's estate and where there is sufficient evidence on which to base a reasonable estimate of the claim, the bankruptcy judge should determine the value." *Bittner*, 691 F.2d at 135-36.

As for the standard for estimation, courts have held that, even when the amount of damage is fixed, liquidated and undisputed, the estimation process should take into account the likelihood that the claimant would prevail on the merits and apply that probability to the amount of damage. *Windsor Plumbing*, 170 B.R. at 521-22; *In re Farley, Inc.*, 146 B.R. 748, 753 (Bankr. N.D. Ill. 1992). In assessing the probable success of a claim, courts have most often

---

[35] *See In re Lionel L.L.C.*, 2007 WL 2261539 at 5 (S.D.N.Y. Aug. 3, 2007) (holding that the truncated process that can be utilized under 502(c) is consistent with the mandates of due process).

[36] While the bankruptcy court in *Lane* found that the claimants did not have a right to a jury trial, and that their tort claims were merely "tossed in", the bankruptcy court acknowledged it is only in the rare and unusual cases where estimation of a claim should involve a jury trial.

used weighted probabilities as a standard.  *See Windsor Plumbing*, 170 B.R. at 521.  Many

courts, however, have effectively disallowed claims by estimating them at zero.  *See, e.g., In re*

*Corey, supra*, 892 F.2d at 834 (affirming estimation of speculative property ownership claims at

zero); *In re Thomson McKinnon Securities, Inc.*, 143 B.R. 612, 621 (Bankr. S.D.N.Y. 1992)

(disallowing fraud and misrepresentation claims on grounds that they had no value); *Bittner*, 691

F.2d at 136-37 (bankruptcy court did not abuse its discretion by estimating tortious interference

claims according to their ultimate merits and assigning a zero value to those claims where it

seemed more probable than not that the claims would ultimately fail in another forum); *Falk v.*

*Falk (In re Falk)*, 2013 WL 5405564, at * 7 (B.A.P. 9th Cir. Sept. 26, 2013) (bankruptcy court

need only reasonably estimate probable value of claim, such an estimate necessarily implies no

certainty and is not a finding or a fixing of an exact amount, it is merely the court's best estimate

for the purpose of permitted the case to go forward).

Such is true even in the context of personal injury claims where a right to a jury trial

exists.[37] *See Official Committee of Asbestos Claimants v. G-I Holdings, Inc. (In re G-I Holdings,*

*Inc.), 295 B.R. 211, 218 (D. N.J. 2003)*.  In *In re G-I Holdings, Inc.*, an official committee of

asbestos claimants filed a motion for partial withdrawal of reference as to the debtor's

application for estimation of asbestos-related personal injury claims under 11 U.S.C. § 502(c).

*See id.* at 215.[38]  The New Jersey District Court found that the debtor's proposal to estimate the

value of individual asbestos claims would result in an effective liquidation of the tort claims, and

indicated that it was unclear whether the determination of whether the debtor's proposal should

be followed is a core or a non-core proceeding.  *Id.* at 219.  The District Court held that that

"outside of bankruptcy, it takes years and hundreds of millions of dollars in legal fees to reduce

claims to judgments or settlements…estimation can drastically reduce the time and expense

involved and can transfer hundreds of millions of dollars from legal fees to payment to legitimate

---

[37] Indeed, the estimation of a personal injury and wrongful death claim for the purposes of
confirming a plan under chapter 11 constitutes a core matter pursuant to 28 U.S.C. 157(b)(2)(B).

[38] After filing the motion to withdraw the reference as to the debtor's claim estimation motion,
the asbestos claimant committee filed its own estimation proposal for the purposes of voting.

1    claimants" and holding that "[g]iven its understanding of the facts and issue in this case, and

2    knowledge of the chapter 11 reorganization process, the Bankruptcy Court should attempt the

3    estimation proceeding in the first instance. If the Bankruptcy Court determines that the

4    estimation is a core proceeding, then it may conduct the proceeding and enter a final order.  To

5    the extent that the determination is a non-core proceeding…the Bankruptcy Court can

6    recommend the estimation method to this Court pursuant to 28 U.S.C. § 157(c)". *See also*, *Foster

7    v. Granite Broadcasting Corp.* (*In re Granite Broadcasting Corp.)*, 385 B.R. 41, 49 (S.D. N.Y.

8    2008) (even assuming claims asserted by claimant were personal injury claims, bankruptcy court

9    still within its authority to make the threshold determination of whether the claims are allowable

10   and whether such claims are subject to estimation for all purposes at $0).

11       In *In re Roman Catholic Archbishop Of Portland In Oregon*, 339 B.R. 215 (Bankr. Or.

12   2006), the debtor sought the estimation of all unresolved child abuse tort claims, and the

13   bankruptcy court found that the purpose of the debtor's request was for distribution purposes. *Id.

14   at 219-20.*  While concluding that the bankruptcy court cannot make a binding determination of

15   the estimated value of the claims for distribution purposes, the bankruptcy court expressly

16   acknowledged its ability to estimate personal injury claims and provide recommendations to the

17   district court regarding the manner of estimation. *Id.* at 221-23.

18       In *In re Smith*, 389 B.R. at 902, the bankruptcy court held that it has jurisdiction for the

19   pretrial estimation of personal injury claims, stating that "holding that there is no jurisdiction

20   over personal injury tort claims would also prevent the court from estimating personal injury

21   claims under Section 502(c), which is also contrary to the current state of the law", and finding

22   that "a conclusion that 28 U.S.C. § 157(b)(5) is jurisdictional would effectively destroy the

23   bankruptcy court's ability to estimate or otherwise treat personal injury claims.  This could

24   unacceptably limit the bankruptcy system's ability to effectively resolve bankruptcy cases

25   involving personal injury claims . . . .").

26       Under the Proposal, claimants will be afforded the opportunity to indicate whether they

27   consent to the entry of final orders by this Court in connection with the estimation of personal

28   injury or wrongful death claims against the Debtors.  If such parties consent, then there is no

issue whatsoever with this Court entering final orders.  If such parties do not consent, then the District Court will enter final orders pursuant to this Court's proposed findings of fact and conclusions of law.  Thus, the Proposal comports with 11 U.S.C. § 502(c) and 28 U.S.C. § 157(b)(5).

**C.**     **This Court Has The Authority To Make Binding Estimations For Voting And Plan Distribution Purposes.**

Section 502(c) authorizes the Court to estimate a contingent or unliquidated claim for the "purpose of allowance" of such claim.  The language of Section 502(c) does not expressly state whether claims are estimated for voting purposes only, for voting and confirmation purposes, or for all purposes, including distribution under a plan of reorganization.  However, courts have wide discretion to determine the appropriate method and purpose of the estimation.  *In re Trident Shipworks, Inc.*, 247 B.R. 513, 514 (Bankr. M.D. Fla. 2000) (court estimated unliquidated breach of contract claim for voting purposes and recognized that estimation of claims may be for voting *and* distribution purposes).

Indeed, "[i]t is . . . well established that the estimation proceeding may be used . . . to determine the allowed amount for distribution purposes." *Id.*  The Court explicitly held in *In re Frontier Airlines, Inc., supra*, 137 B.R. at 814, that "the phrase 'for purpose of allowance in § 502(c) is reasonably construed to encompass both the allowance and disallowance (through valuation at zero) of contingent or unliquidated claims."  Thus, it is well within this Court's (or the District Court's) discretion to estimate the Tort Claims for purposes of voting *and* distribution, which is tantamount to the estimation process being binding on claimants, since once distributions to unsecured creditors are made in this case, it would be too late to retrieve distributions if it later turned out that the claimants were able to obtain a higher allowed claim from the courts in which the Tort Claims are presently pending.

This Court has the authority to make a binding estimation of claims.  *See Interco, Inc.*, 137 B.R. at 998 (holding that when plan confirmed, estimated amount is not only a cap but also a final adjudication and determination of any claim subject to an estimation proceeding); *see also In re Lionel L.L.C.*, 2007 WL 2261539 at 5 (S.D.N.Y. Aug. 3, 2007) (holding that the truncated

trial process that can be utilized under 502(c) is consistent with the mandates of due process, even in the context of business tort claims).  Alternatively, at the least, this Court should hold that any estimation of the Tort Claims should be a cap on any liquidated amount of the Tort Claims. *See In re Baldwin-United Corporation*, 57 B.R. 751, 758 (S.D. Ohio 1985) (providing that parties may proceed in a separate forum even after estimation, but only for the purpose of determining whether liability could be less, in connection with federal security law class action litigation).  Without a binding determination of the validity and amount of the Tort Claims, the Debtors have no ability to make distributions.  Without a *binding* determination, any Claims estimation process would not achieve its goal, which is to avoid an unnecessary and substantial delay in the administration of these bankruptcy estates.

## IV.    CONCLUSION

The Debtors respectfully request that this Court enter an order:

1.    Adopting the Proposal; and

2.    Granting such further relief as the Court deems just and proper.

Dated: June 12, 2015                NORTH AMERICAN HEALTH CARE,  INC., ET AL.


By:    */s/ Krikor J. Meshefejian*
    David L. Neale
    Krikor J. Meshefejian
    Levene, Neale, Bender, Yoo & Brill L.L.P.
    Attorneys for Chapter 11 Debtors
    and Debtors in Possession

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 10250 Constellation Boulevard, Suite 1700, Los Angeles, CA 90067

A true and correct copy of the stipulation **DEBTORS' TORT CLAIM RESOLUTION PROPOSAL** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.   TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **June 12, 2015**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Todd M Arnold     tma@lnbyb.com
- Shiva D. Beck     sdelrahim@lockelord.com
- Jeffrey W Broker     jbroker@brokerlaw.biz
- Frank Cadigan     frank.cadigan@usdoj.gov
- Christopher Celentino     celentinoc@ballardspahr.com, burkec@ballardspahr.com
- Baruch C Cohen     bcc4929@gmail.com, pjstarr@starrparalegals.com
- Joseph A Eisenberg     jae@jmbm.com,
  vr@jmbm.com;tgeher@jmbm.com;bt@jmbm.com;jae@ecf.inforuptcy.com
- Marc C Forsythe     kmurphy@goeforlaw.com, mforsythe@goeforlaw.com
- Jeffrey K Garfinkle     jgarfinkle@buchalter.com,
  docket@buchalter.com;dcyrankowski@buchalter.com
- Margaret E Garms     margaret@parkinsonphinney.com
- Thomas P Griffin     tgriffin@hsmlaw.com
- Kenneth Hennesay     khennesay@allenmatkins.com
- Jeanne M Jorgensen     jjorgensen@pj-law.com, esorensen@pj-law.com
- Colleen M Keating     ckeating@ktbslaw.com
- Krikor J Meshefejian     kjm@lnbrb.com
- Vincent J Miller     vincent@vincentmillerlaw.com, vincentjmiller@gmail.com
- David L. Neale     dln@lnbyb.com
- Ernie Zachary Park     ernie.park@bewleylaw.com
- Robert J Pfister     rpfister@ktbslaw.com
- Estela O Pino     epino@epinolaw.com, staff@epinolaw.com
- Richard A Rogan     rrogan@jmbm.com, jb8@jmbm.com;to1@jmbm.com
- David M Stern     dstern@ktbslaw.com
- United States Trustee (SA)     ustpregion16.sa.ecf@usdoj.gov
- Kathryn T. Zwicker     kzwicker@ktbslaw.com

**2.   SERVED BY UNITED STATES MAIL**: On **June 12, 2015**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ *Service information continued on attached page*

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                           **F 9013-3.1.PROOF.SERVICE**

1  **3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR,

2  on **June 12, 2015**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or

3  email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

4

*Served via Overnight Mail*

5  Hon. Mark S. Wallace
United States Bankruptcy Court

6  Ronald Reagan Federal Building and Courthouse
411 West Fourth Street, Suite 6135 / Courtroom 6C

7  Santa Ana, CA 92701-4593

8  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

9

June 12, 2015          Stephanie Reichert                    /s/ Stephanie Reichert

10  *Date*                    *Type Name*                       *Signature*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

Chandler:

Bashar Ahmad
BOUTIN JONES INC.
555 Capitol Mall, Suite 1500
Sacramento, CA 95814

Lesley A. Clement, Esq.
Clement & Associates
2209 J Street
Sacramento, CA 95816


Howarth:

Jay P. Renneisen, Esq.
Law Offices of Jay P. Renneisen
1414 K Street, Suite 470
Sacramento, CA 95814


Pierce:

Barry Vogel, Esq. & Lorie Kruse, Esq.
La Follette, Johnson, Dehaas,
Fesler & Ames
655 University Avenue, Suite 119
Sacramento, CA 95825

James R. Donahue, Esq.
Michael E. Myers, Esq.
Donahue Davies, LLP
One Natoma Street
Folsom, CA 95630

Wendy C. York, Esq.
York Law Corporation
1111 Exposition Blvd., Bldg., 500
Sacramento, CA 95815

RX Staffing and Home Care, Inc.
4640 Marconi Ave
Sacramento, CA 95821


Wilson:

Scott L. Gassaway, Esq.
Steven J. Williamson, Esq.
Wilke, Fleury, Hoffelt, Gould & Birney, LLP
400 Capitol Mall, 22nd Floor
Sacramento, CA 95814

Christopher S. Buckley, Esq.
Janice D. Dudensing, Esq.
Dudensing/Buckley
925 G. Street
Sacramento, CA 95814


Goldman:

Scott L. Gassaway, Esq.
Steven J. Williamson, Esq.
Wilke, Fleury, Hoffelt Gould & Birney, LLP
400 Capitol Mall, 22nd Floor
Sacramento, CA 95814

Edward Dudensing, Esq.
Christopher S. Buckley, Esq.
The Law Office
1414 K Street, Suite 470
Sacramento, CA 95814


Kayle

Stewart Kayle
P.O. Box 261205
Encino, CA 91426

Stewart Kayle
5333 Balboa Boulevard, #226
Encino, CA 91316

Jeffrey Kayle
11835 Cannel Mountain Road
Suite 1304-364
San Diego, CA 92128

Randall Kayle
29040 Via Zapata
Murrieta, CA 92563

Mitchell Kayle
3845 West 226th Street, #42
Torrance, CA 90505

*Attorney for Plaintiffs*
Thomas V. Girardi
Girardi Keese
1126 Wilshire Blvd.
Los Angeles, CA 90017


Byrne

Michael F. Moran
Lisa Trinh Flint/Alex H. Feldman
Moran Law
5 Hutton Centre Drive, Suite 1050
Santa Ana, CA 92707